(28 Misc. Rep. 287.)

RAWLINSON et al. v. BRAINARD & ARMSTRONG CO.

(Supreme Court, Special Term, New York County. July, 1899.)

1. TRADE-MARKS—ARBITRARY OR DESCRIPTIVE CHARACTER OF WORDS.

A manufacturer may adopt as a trade-mark a new combination of words, which up to that time have had no significance attached to them in the trade in which they are used, and have not been used in the trade or by the general public, and will be protected in their use as a trade-mark, although they may be suggestive of the general nature of the article to which they are applied.

2. SAME.

Plaintiffs several years ago adopted, and have since used, as a trade-mark, the name "Filo-Floss," to designate the silk floss manufactured and sold by them. The words had never been previously used in combination, and the evidence showed that the word "filo" had not been used alone in the trade, and that neither that nor the combination "filo-floss" were used to designate any peculiar quality or character of the fabric, except as it has come to be associated with the plaintiffs' manufacture. Held, that the words constituted a valid trade-mark.

Action by William George Rawlinson and others against the Brainard & Armstrong Company to restrain the use of a trade-mark. Judgment for plaintiffs.

Shipman, Larocque & Choate (Joseph Larocque, Jr., of counsel), for plaintiffs.

Putney & Bishop, for defendant.

STOVER, J. This action is brought to restrain the use of the trade-mark "Filo-Floss," which it is claimed the plaintiffs have legally adopted and appropriated to their exclusive use. It is claimed that the trade-mark was invented by the plaintiff Rawlinson, and had never been before used. The plaintiffs are silk manufacturers in England, and comprise the firm of Pearsall & Co., and have been doing business for a great many years under this style. Silk floss had been known for several hundred years, and there had also been manufactured for at least 50 or 60 years a material known as "Filoselle." These two silks differed, the floss being superior in luster, and the filoselle being an article capable of division to a very large extent. In 1881 the plaintiffs used the word "Filo-Floss," and placed upon the market a floss capable of being divided and separated as to texture to suit the customer or the person using it. This product was sold by plaintiffs under the brand of "Filo-Floss." The plaintiffs manufactured the article for a number of years, and there is no

doubt but that, in the present condition of the trade, "Filo-Floss" is a well-known material, and is also known as "Filo." The claim of the defendant is that the word "filo," being derived from the word "filum," thread, when used in connection with the word "floss," is simply a description of the article, and that the words "filo" and "floss" were and are in common use, and indicate the character, kind, quality, or composition of the embroidery. I think that the plaintiffs have established the fact that the word "filo" was not in such general use in the trade as to be understood as indicating either the character or quality of any manufactured product. The only instance in which it is claimed it was used was in the case of "Filoselle," but it is nowhere said or claimed to have been understood that the use of the word "filo" in connection with the word "selle" indicated that it had any peculiar meaning, but that its only use in the trade was to describe the particular silken fabric, and did not indicate that it was meant that it was to distinguish any peculiar quality or character of the fabric,—in other words, that it was an arbitrary definition which had been given to that particular fabric. So the use of the word "filo" in connection with "floss." It seems that, in the introduction of floss made by the plaintiffs, they adopted the combination of "Filo-Floss." The addition of "filo" added nothing either to the quality or character of the floss. Embroidery silk dealers, it appears, had used and understood the meaning of the word "floss," and it does not appear that "Filo-Floss," except as it may have been brought into use by the plaintiffs' efforts, raises any definite distinction among the various kinds of floss that are manufactured, unless it is claimed by the plaintiffs that the floss manufactured by them is of a different general quality than that manufactured by others. That they may manufacture a superior grade, and that there may be some distinctive features in the floss manufactured by plaintiffs from that of other manufacturers, is almost inevitable, as these various grades of manufacture arise from the various methods of treatment, skill, and handling in the various factories. It may be that the defendant's floss is superior to that of the plaintiffs, but it is sufficient for the purposes of this case that the word "filo" does not, and is not intended to, indicate the character of the floss. Stress is laid upon the case of Casswell v. Davis, 58 N. Y. 223. In that case the trademark sought to be protected was "Ferro-Phosphorated Elixir of Calisaya Bark." "Elixir of calisaya bark" was a common and ordinary name for a well-known substance. The plaintiffs added to this substance phosphorus and iron, and added to the name "Ferro-Phosphorated"; "ferro" and "phosphorated" having well-defined meanings among chemists. So that it would be apparent to anybody, upon seeing the trade-mark, that it was the elixir of calisaya bark treated with iron and phosphorus; and it is upon this that the decision of the case is based, namely, that the words used were, at the time of their adoption and introduction, not of original use and ownership alone, but also the characteristics, quality, and composition. And in that case one of the plaintiffs testified that the object of the inventors of the trade-mark was that it might indicate to the medical profession what the general ingredients of the medicine were. These

elements are lacking, I think, in the case in question. It cannot be said that the word "filo" is a word that has come into such general use, or that it has such a significance, either in the trade or general acceptance, that it cannot indicate either character, quality, or composition. It is true that "filo" might be considered as the dative or ablative of "filum," thread; but even that does not indicate, under the evidence in this case, that either the trade or the public generally had put any significant meaning to the word itself; but, so far as appears here, the word is an arbitrary one, and is used arbitrarily by the plaintiffs, and not to indicate any characteristics of the article. Nor is it quite certain that if the plaintiffs had adopted a newly-coined word to designate their product, although it was suggestive of the material or some characteristic of the article, they thereby failed in the invention of a valid trade-mark. While it is true that a person has no right to employ any word, sign, or symbol which, from the nature of the fact it is used to signify, others may employ with equal truth, and therefore with equal right, and that generic names and words descriptive of quality are common property, and no one has a right to an exclusive use of them, yet if a plaintiff discovers that by the coining of a new word, or the use of a new combination of words, which up to the date of its discovery have had no significance attached to them in the trade in which they are used, and which have not been used in the trade or by the general public, although such word may be suggestive, the inventor may adopt it, and will be protected in its use as a trade-mark. It is true that up to the time of the use by plaintiffs no one had ever heard the word "filo" used in connection with "floss," and it does not appear that it had ever occurred to any one that the word "filo" had any significance in connection with the manufacture of silk floss. And it is equally true of every invention that, until it is discovered and brought into action, anybody may use it; but it is the act of discovery and the use of the invention that constitutes it the sole property of the inventor, and gives him the right to be protected in its use. I have not lost sight of the testimony of some witnesses who have said that floss was sometimes known under the general name of "filo," but this all appears to be a long time subsequent to the introduction of the word by plaintiffs; and, if any significance is to be attached to this evidence, it is that plaintiffs' efforts have given a standard to the floss manufactured by them, and that the use of the word "filo" by rivals in the trade is an infringement upon their rights. But, in the view which I have taken above, it is apparent that the plaintiffs are the inventors of the trade-mark "Filo-Floss"; that the word "filo" is not descriptive of character, quality, or composition, but that it does indicate the origin of the fabric manufactured by the plaintiffs; and that it is a valid trade-mark. Plaintiffs are entitled to the usual judgment.

Judgment for plaintiffs.