(29 Misc. Rep. 609.)

STERN v. BARRETT CHEMICAL CO.

(Supreme Court, Appellate Term. November 29, 1899.)

1. TRADE-MARKS—INSTRUCTIONS.

    On the question of the existence of a trade-mark, it was shown without contradiction that defendant's predecessors in business had adopted the arbitrary word "Roachsault" for use on their labels, and had it duly registered in the patent office, and had transferred the same to defendant. At the time of its adoption the word was not otherwise known nor used by others. *Held*, that defendant was entitled to a charge that he had a valid trade-mark, and it was error to submit the question to the jury.

2. SAME—LIBEL.

    In an action for libel, where defendant justified on the infringement of his trade-mark by plaintiff, the evidence showing the trade-mark, it was error to submit the question of trade-mark, and charge that, if defendant had a trade-mark, that ended the case, but the court should have charged that it was for the jury to determine whether plaintiff had infringed the trade-mark, and, if so, whether the words uttered were within justifiable limits.

Appeal from city court of New York, general term.

Action by Julius Stern against the Barrett Chemical Company. From a judgment (58 N. Y. Supp. 1129) affirming a judgment at special term for plaintiff, defendant appeals. Reversed.

Argued before FREEDMAN, P. J., and MacLEAN and LEVENTRITT, JJ.

Charles B. Meyer, for appellant.

Arthur Furber, for respondent.

FREEDMAN, P. J. This action is for damages alleged to have been sustained by the plaintiff by reason of the publication by the defendant of a libel concerning the plaintiff in his business as a manufacturer of, and dealer in, an insecticide. The libel complained of was contained in a letter sent by the defendant to a number of dealers in plaintiff's article. The defendant and its predecessors in business, since 1895, had manufactured an insecticide, and sold the same under a label upon which, together with descriptive matter, was prominently displayed the word "Roachsault." That word was registered in the patent office at Washington as a trade-mark. Plaintiff called his article "Insectago," and described it at the top of the label used by him, which in appearance was very different from that of the defendant and prominently set forth plaintiff's name as the manufacturer, as "Warranted Chemical Roach Salt." The defendant addressed to a number of dealers who were selling plaintiff's insecticide, labeled as aforesaid, a letter in which it charged plaintiff with unlawfully imitating its trade-mark, and characterized his acts as robbery, and threatened to prosecute, both civilly and criminally, all parties who dealt in or kept any insecticide put up or sold under any label including the word "Roachsault" or any imitation of that word. The letter also contained extracts from the Penal Code relating to trade-mark imitations and the punishment therefor. The plaintiff thereupon brought this action for damages, alleging that the publication mentioned was libelous, and upon the trial gave evidence in support thereof.

The case, as it shaped itself upon the trial, became one for the jury to determine. Defendant's motion, at the close of plaintiff's case, for a dismissal of the complaint, was properly denied; and the denial of the defendant's motion, at the close of the whole case, for the direction of a verdict in defendant's favor, was equally proper. Under these circumstances, this court cannot consider the weight of the evidence, but only the exceptions taken.

Aside from the question of damages, the evidence, as it stood at the close of the whole case, called for the determination of the following questions, viz.: (1) Whether the defendant had or had not a trade-mark in the word "Roachsault," as used upon its label; (2) if it had, whether the plaintiff had or had not been guilty of an infringement thereof; and (3) whether, in case of an infringement, the defendant had or had not been justified, in whole or in part, in issuing and sending the letter referred to.

Upon the first question the evidence was undisputed, and fully sustained defendant's claim of a trade-mark. Defendant's counsel thereupon requested the trial judge to instruct the jury that defendant had a valid trade-mark in the word "Roachsault." The judge refused the request, and left the question to the jury as a question of fact, to which ruling defendant's counsel duly excepted. This ruling constituted error. It appeared, without contradiction, that defendant's predecessors in business, in 1895, adopted the arbitrary word "Roachsault" for use upon their labels, and had it duly registered in the United States patent office, and that subsequently they transferred all their right, title, and interest in and to the same to

the defendant, in connection with the business to which it related. At the time of such adoption, the said word was not one otherwise known in the English language, nor used by anybody else, and was thereafter exclusively used by defendant's predecessors and the defendant. By the decisions of Keasbey v. Chemical Works, 142 N. Y. 467, 37 N. E. 476, relating to the words "Bromo Caffeine"; Selchow v. Baker, 93 N. Y. 59, relating to the words "Sliced Animals"; Rawlinson v. Brainard & Armstrong Co. (Sup.) 59 N. Y. Supp. 880, relating to the words "Filo Floss," as applied to silk floss; and Waterman v. Shipman, 130 N. Y. 301, 29 N. E. 111, relating to the word "Ideal," as applied to fountain pens,—it has been established that a suggestive word may be none the less a valid trade-mark, and that, before a term or word will be held purely descriptive and insufficient as a foundation for a trade-mark, its description must import information as to the general characteristics and composition of the article to which it applies. For the reasons stated, it conclusively appeared that the defendant had a valid trade-mark, and the defendant was consequently entitled to have the jury instructed that, as matter of law, the fact had been sufficiently proven.

The trial judge not only refused the defendant's request to that effect, and left the jury free to determine the question either way as one of fact, but he also told them that, if the defendant had a trade-mark, it was the end of plaintiff's case. The importance of this error becomes evident when it is considered that the jury, in finding for the plaintiff, as they did, may have based their finding upon the fact found by them, irrespective of the other questions in the case, that the defendant had no trade-mark. They should have been instructed that the defendant had established a valid trade-mark, and that it was for them to determine whether or not the plaintiff had infringed upon it, and that, if he did, it remained to be seen whether the defendant, in issuing and sending the letter in question, had kept within, or stepped beyond, justifiable limits. The instructions given the jury as a whole contain nothing which cured the error already pointed out, and hence a reversal of the judgment cannot be avoided. This being so, it is unnecessary to consider any of the other questions argued upon the appeal.

Judgment appealed from reversed, new trial ordered, with costs to the appellant to abide the event. All concur.

MacLEAN, J. (concurring). This action was brought to recover damages as for an alleged libel by the defendant of and concerning the plaintiff in his business of manufacturer of, and dealer in, an insecticide. The appellant and its predecessors in business had prepared and sold an insecticide put up in boxes bearing a label upon which was duly displayed, as its trade-mark, the arbitrary word "Roachsault," which name was registered in the patent office at Washington as a trade-mark. The respondent put up and sold a preparation of his own in boxes which bore, with other matter, the words "Stern's Insectago." It does not appear that this arbitrary word was ever registered. Subsequently, Stern caused his label to be altered by placing thereon, in prominent type, the

words "Warranted Chemical Roach Salt," the last nine letters being printed in capitals, but not so as to indicate very plainly whether as one word or two. After this change of label, the defendant, in writing, notified the plaintiff that it had been informed that he was "using the word 'Roachsault' * * * in connection with an insecticide"; stated that such use was wrongful, because in violation of the exclusive rights secured by United States trademark for the word "Roachsault"; and requested him to immediately discontinue the use of the word "Roachsault." To this the plaintiff replied: "I believe I have a perfect right to call my 'Insectago' a 'Roachsalt,' and I shall continue to do so, unless restrained by the courts." Then the defendant company wrote to its customers that it had recently come to its knowledge that its business word and trade-mark, "Roachsault," was being unlawfully placed upon the labels of an insecticide with which it had no connection, adding: "Confident that all honest and fair-minded dealers will sustain us in our position against such robbery of our property (our trade-mark word), we nevertheless desire to give everybody notice that we shall hold responsible, both civilly and criminally, all parties who deal in or keep any insecticide which is put up or sold under any name or label which includes our word 'Roachsault,' or any imitation of that word. We call attention to the following extracts from the Penal Code of the state of New York,"—which extracts were sections 364–368 and section 15 of the Penal Code. It appeared upon the trial that no chemical was known as "Roachsault" or "Roach Salt." The jury returned a verdict for the plaintiff. As intimated above, it was alleged and proven that the word "Roachsault" was first adopted and used by another corporation, to whose business of making and selling insecticides the defendant succeeded, and that by assignment it became the sole owner thereof, and that the same was registered in the United States patent office. There was ample proof of a valid trade-mark in the word, and there being no attempt at contradiction of the fact, of which something had been made upon the trial, the defendant was entitled to a charge to that effect upon due application; but the court, upon request in writing to charge, "First, defendant had a valid trademark in the word 'Roachsault,' " replied, "The first request I decline, and leave the question to the jury;" to which the defendant excepted. For aught that appears, the jury may have reached their conclusion in favor of the plaintiff, premising such conclusion upon the fact that defendant was not entitled to any trade-mark or any protection of it. This is the more probable, in view of the fact that the learned justice had already said to the jury: "If this was a trade-mark, then, of course, that ends this action, and your verdict must be for the defendant." Under this charge, and the leaving of the proven fact in abeyance, it would seem to follow that the jury must have found that the word "Roachsault" was not a trademark. Again, the court said: "If this was a trade-mark, and this letter was issued in regard to an infringement of it, it would not be a libel; it would be justified, and the defendant would be entitled to a verdict." This seems to say, in effect, that the alleged de-

famatory matter was privileged, if the jury should find as a fact that it had not been contradicted by the plaintiff. But, when the court was requested to charge that the letter and the quotations from the Penal Code sent by the defendant to its customers were privileged, the court refused, against the exception of the defendant. This was also error. The question of privilege was a question of law. Klinck v. Colby, 46 N. Y. 427; Hamilton v. Eno, 81 N. Y. 116, 122; Byam v. Collins, 111 N. Y. 143, 150, 19 N. E. 75, 2 L. R. A. 129. Furthermore, the court, on being requested to charge that unless the defendant's acts were malicious the plaintiff could not recover, also declined, against the exception of the defendant. This, too, was error. Proof of the validity of the trade-mark remaining uncontradicted, the publication was privileged, because both the one making and the one receiving the communication were interested therein, and the court should have so charged. The presumption of malice—"malice in law"—disappears on proof that the occasion was privileged, and the plaintiff, to defeat this defense, must prove actual malice,—"malice in fact." The court also refused, against exception, to admit evidence bearing upon actual malice; but this need not now be commented upon, because the court improperly refused to charge that actual malice was part, and a very important part, of the plaintiff's case. The judgment should be reversed.

Judgment reversed, and a new trial ordered, with costs to the appellant to abide the event.