ADOLF J. MAINZER, INC., Appellant, *v.* COLEMAN GRUBERTH, Doing Business under the Name and Style of AMERICAN FRUIT COATING COMPANY, Respondent, Impleaded with AMERICAN ALMOND PRODUCTS CORPORATION, Defendant.*

First Department, December 9, 1932.

*Max D. Ordmann,* for the appellant.

*Hyman H. Hammer* of counsel [*Israel Uhrman* with him on the brief], for the respondent.

* Affd., 262 N. Y. ——.

MARTIN, J.   In this action the plaintiff seeks to recover damages and asks for an accounting and an order restraining the defendants, their employees, agents and others, both temporarily and permanently, from unfairly competing with plaintiff and infringing each of two trade-marks registered in the United States Patent Office, namely, the trade-mark " Apricoating," Registration No. 152869, and the picture of a baker or chef, Registration No. 207897.

Adolf J. Mainzer, Inc., and its predecessor have been engaged in the manufacture and sale of bakers' specialties for many years. In 1921 the plaintiff's predecessor originated a product for use by bakers as a covering over fruit tarts in order to keep the fruit in position.   Prior to that time this sort of product was commercially unknown.   The plaintiff's predecessor originated the trade-mark " Apricoating " therefor.   The picture of a cook or baker on a yellow label with red marginal borders on both sides was adopted as an additional trade-mark.

The plaintiff's product is packed in two ways, one in conical tubs each containing thirty pounds, and the other in tin cans each containing eight pounds, which cans are then packed in wooden boxes, six cans to each box.   Paper labels cover each can and both the tubs and the wooden boxes also are labeled.   Above the center of each label is prominently displayed the trade-mark " Apricoating " in red letters and the words " Apricot Glace " and " Fruit Icing." At the left side is printed the picture of a cook or baker and directions for using the product.   At the right side of the label is prominently displayed the words, " Always insist on the Original Mainzer's Apricoating — The one with the yellow label — Because it is the best — Beware of cheap imitations."

The trial court held the trade-marks valid in law and found the defendant guilty of unfair competition by his close imitation of appellant's mode of packing and of the labels, and of infringement of appellant's trade-mark representing a cook or baker.   The court, however, refused to hold that the defendant infringed plaintiff's other registered trade-mark " Apricoating " by the use of the words " Apricot Coating " which defendant adopted for the same type of merchandise produced by the plaintiff for many years.

The plaintiff, appellant, says that it and its predecessor in business have spent large sums of money in advertising their product; that they have always exercised great skill and care in making their product; that they have always used ingredients of the best quality, as a result of which " Apricoating " has been enjoying a reputation of the highest character among the trade.

The defendant Coleman Gruberth, who was a baker from 1921 to 1925, used the plaintiff's product and was familiar with the

manner in which it was packed. In 1929 he began the manufacture and sale of a similar product which plaintiff claims is of a very inferior quality. In order to deceive the public and in willful disregard of plaintiff's exclusive rights under its trade-marks, the defendant imitated the packing and labeling by using packages of the same shape and size; adopted the same two modes of packing with yellow labels and red marginal lines and used the words "Apricot Coating," below which, in red letters and in a prominent position were the words "Fruit Icing" and "Apricot Glace."

In addition to the use of these words, there appears the picture of a cook or baker and directions for the use of the product, which directions are similar to those on appellant's labels. At the right of the labels, in prominent display, appear the words "Always insist on Just Rite Genuine Apricot Coating, the one with the improved flavor and better taste," and just below are the words "Beware of Imitations."

The record shows that the words "Apricoating" and "Apricot Coating" had never been used by bakers or consumers before and that there is now confusion among the trade as to the origin of the product by reason of the deceptive similarity of the names.

Upon this appeal the plaintiff contends that it was error for the Special Term to refuse to hold that there was an infringement of the plaintiff's trade-mark "Apricoating" and in not restraining the defendant from using the words "Apricot Coating." The defendant contends that no person or corporation may appropriate a word or a group of words which properly describe an article, its qualities, ingredients or characteristics because such words are public property.

The words "Apricoating" and "Apricot Coating" are not descriptive merely, but have also acquired a secondary meaning in that they suggest the origin of the goods. "Coating" is defined in the Century Dictionary (Vol. 2, p. 1071) as a covering, or any substance spread over a surface for protection or ornamentation, as a coating of plaster or tin foil.

The plaintiff says that the word "Coating" was never used in the trade prior to its origination by it; that such coverings had been known as "frosting," "glacing," "topping," "shine" or "glace;" that the words "Fruit Icing" and "Apricot Glace" appear on plaintiff's labels as words of description and that similar words appear on the defendant's product.

In *LeBlume Import Co., Inc.*, v. *Coty* (293 Fed. 344, 351) the court said: "The cases show that the courts under certain circumstances protect the use of words as trade marks, even though they suggest the ingredients, qualities or characteristics of the goods. The distinction is between words which are 'descriptive' and those

which are merely 'suggestive.' Neither is it necessary that words to be available as trade marks should carry no suggestion of any meaning. The line of demarcation may not be easy to draw but it exists. See Nims on Unfair Competition and Trade-Marks 2d ed. §§ 200–202."

Nims in his work on Unfair Competition and Trade-Marks [3d ed.] p. 110) says: "The questions involved in these cases are: first, as to whether or not the name used by the plaintiff is used by him and understood by the public to be used by him, in its general or common meaning, or in a trade sense, as identifying him or his goods; second, when the public does give to the name, when used by the plaintiff, a trade meaning, whether the defendant has so used it as to prevail on purchasers to buy defendant's goods, believing that they were getting the goods made by the plaintiff. Of course if the defendant used direct misrepresentation, the plaintiff's remedy is plain."

In *Selchow* v. *Baker* (93 N. Y. 59, 64) plaintiffs were for many years manufacturing and selling games and puzzles under the name " Sliced Animals." About eight years later the defendant began to sell similar articles under the same name. In its opinion the court said: " The name had been invented by the plaintiffs and had never before been applied to the toy, although toys of a similar character had been in use. The plaintiffs were the only persons using it, and it had become the distinguishing mark by which their manufactures had become known and were dealt in in the market. It is difficult to conceive what motive the defendants could have had in adopting it, other than to appropriate to themselves the benefit of the popularity which the plaintiffs had obtained for their products, by advertising and other means, and to divert their trade to themselves. We think the word adopted by the plaintiffs constitutes a valid trade mark.

" It cannot be true as a general proposition, as contended on the part of the defendants, that when a manufacturer has given to his products a new name invented by himself for the purpose of distinguishing them as his, and the article becomes generally known to the trade and to the public by that name, the name becomes public property and every one has a right to use it. That proposition can be sustained only in respect to names which are descriptive of the article and incapable of being appropriated as trade marks. The value of a trade mark consists in its becoming known to the trade as the mark of the manufacturer who has invented or adopted it, and in being known to the public as the name of an article which has met with popular favor. It cannot be that the very circumstances which give it value, operate at the same time to destroy it."

By appropriating the words used by the plaintiff or by the use of similar words, the defendant deliberately attempted to take away a competitor's business without any justification therefor. Such unfair use of the same or similar words by a competitor will be restrained by injunction.

In *Levy* v. *Walker* (L. R. 10 Ch. Div. 436, at pp. 447, 448) the court said: " I am of the same opinion. It should never be forgotten in these cases that the sole right to restrain anybody from using any name that he likes in the course of any business he chooses to carry on is a right in the nature of a trade-mark, that is to say, a man has a right to say, ' You must not use a name, whether fictitious or real — you must not use a description, whether true or not, which is intended to represent, or calculated to represent, to the world that your business is my business, and so, by a fraudulent misstatement, deprive me of the profits which would otherwise come to me.' "

In *American Tobacco Co.* v. *Polacsek* (170 Fed. 117) the rule is stated as follows: " The logic of the situation may be briefly stated. Either the defendant is endeavoring to profit by the reputation of McAlpin's tobacco or he is not. If it be true that he is making this attempt he should be stopped in limine, if, on the other hand, he is only selling his goods on their merits he does not need the same trade mark as the complainant."

Cases of unfair competition present varying degrees of wrong-doing. There is a distinction between those where one accidentally uses a label or design owned by another, or where there has been an honest mistake, and those where there has been a deliberate attempt to appropriate a trade-mark, label or design or the business of a competitor.

In the interest of common honesty and fair dealing, the courts naturally frown upon such practices. The bold attempt to take away the business of another by adopting the trade-marks, even to the extent of adopting the color, size and form of packages in which the goods are sold, indicates to what extreme some of our modern businessmen will resort. When unfair competition is so designedly accomplished, all opportunity to continue it in any form should be prevented by an injunction sufficiently broad to insure such a result.

The words here used by the defendant were adopted to mislead the public and to deceive purchasers and to induce them to believe they were dealing with the plaintiff or buying the plaintiff's product. To give the plaintiff the relief to which it is entitled, and to prevent fraud, the injunction should restrain the use of the words "Apricot Coating " or any similar words. If the defendant had accidentally

used a word similar to that used by plaintiff, the defendant might be entitled to some consideration.

The Special Term found that the plaintiff suffered considerable injury at the hands of the defendant because of his fraudulent imitation of plaintiff's packing and labeling and the imitation of the plaintiff's valid trade-marks. A mere restraint of the defendant from imitating the packing and labeling will not suffice to prevent further injury, since the continued use by defendant of the words "Apricot Coating" will destroy or render useless the plaintiff's trade-mark "Apricoating."

The judgment so far as appealed from should be modified to the extent indicated, and as modified affirmed, with costs to the appellant.

FINCH, P. J., and MERRELL, J., concur; SHERMAN and TOWNLEY, JJ., dissent and vote for affirmance.

SHERMAN, J. (dissenting). I dissent and vote for affirmance. The record before this court is made up of extracts from the evidence taken at trial, it being stipulated that it contains " all the matter material to the exceptions herein sought to be reviewed." In its notice of appeal, plaintiff states that the appeal is from the decision and judgment only in so far as they " do not include " one of plaintiff's proposed conclusions of law.

Assuming that this record presents the question, I fail to find any reason to disturb or alter the decree of injunction as entered below. Appellant has all the relief to which it is entitled. That judgment grants fully the prayer for relief as stated in the complaint. In some respects it goes beyond it. Defendant is permanently restrained from directly or indirectly using or causing to be used on his merchandise or in connection therewith, any mark, symbol or word in imitation of either of plaintiff's registered trade-marks and from putting up and selling or offering for sale any merchandise packed and labeled in any imitation of the packing and labeling of plaintiff's merchandise, and from using thereon labels or marks in imitation of plaintiff's labels and trade-marks and from in any way unfairly competing with plaintiff or in any other way selling or offering for sale any merchandise packed and labeled and /or marked so as to be likely to be confused with plaintiff's "Apricoating " product.

The complaint is merely one for injunctive relief against unfair competition; no more all-embracing injunction decree can be drawn in such an action than that which was awarded below to plaintiff.

This is not a suit (such as is maintained in the Federal courts) to restrain an infringement of a registered trade-mark. Plaintiff

may in a proper action try out, if it wishes, its claim that no one other than itself may describe the product, sold by these parties to bakers to make an apricot icing upon cakes, as " apricot coating," because its trade-mark dubs its product "Apricoating." " Coating " is an appropriate descriptive word used to describe such icing and when the ingredient is apricot, the term may, I think, properly be employed in the trade in fair competition to designate that product. Plaintiff's president admitted that many manufacturers throughout the United States sell their own apricot coating. It is clearly an apt and suitable name for the product (*Photoplay Publishing Co.* v. *La Vergne Pub. Co.*, 269 Fed. 730) and any one may use it. I cannot agree that these descriptive words must be banished from use in trade because plaintiff has combined them into, and coined, the shorter word " Apricoating," which it claims to have made its trade-mark.

The judgment appealed from should be affirmed.

TOWNLEY, J., concurs.

Judgment modified to the extent indicated in opinion and as so modified affirmed, with costs to the appellant. Settle order on notice reversing findings inconsistent with this determination, and containing such new findings of fact proved upon the trial as are necessary to sustain the judgment hereby awarded.