**ARTYPE, INCORPORATED,**
Appellant,

v.

Joseph **ZAPPULLA,** doing business as
Art-Type Service, Appellee.

No. 110, Docket 23500.

United States Court of Appeals
Second Circuit.

Argued Nov. 16, 1955.

Decided Jan. 3, 1956.

I. Irving Silverman, Chicago, Ill., Edmund F. Lamb, New York City, for appellant.

Rosario Ingargiola, Brooklyn, N. Y., for appellee.

Before HAND, FRANK and MEDINA, Circuit Judges.

HAND, Circuit Judge.

The complaint in this case was upon two claims for relief: one, for the infringement of Registered Trade-Mark No. 509850; the other, for unfair competition. The trade-mark was the word, "Artype," "when used upon letters, symbols, marks, insignia, and similar matter capable of conveying intelligence, applied by various reproducing processes to transparent self-adhering sheets, adapted to be cut up for application of desired portions of said matter to various advertising." The claim for relief for unfair competition was based on the "plaintiff's common law rights in its trademark and trade name * * * and unfair competition with the plaintiff and agents of the plaintiff." The facts, as developed on the trial and as found in the judge's opinion, were in substance as follows. The plaintiff is a corporation, organized under the laws of the State of Illinois, the defendant is a citizen of New York and the controversy is alleged to involve more than $3,000. Beginning in December, 1944, the plaintiff has made and sold a transparent acetate sheet, containing about 800 different samples of letters of the alphabet, numbers and various symbols in different sizes and types. It attempts to offer virtually all possible forms of words, letters, diagrams and signs that may be used in preparing advertising matter. The buyer cuts from the sheet such letters or symbols as he may wish and makes his copy out of them, pasting them on to a sheet of his own by means of an adhesive on the back of the acetate sheet. When the copy is complete, he photographs it and reproduces it in quantity by any one of a number of well-known methods. The plaintiff has customers in this state and elsewhere; it does business under its trade-mark, "Artype."

The defendant is a small dealer doing business in the city of New York. He owns two typewriting machines of a peculiar kind, called "Vari-Type," that enable him to prepare copy for advertisements in varying designs of type. His customers send to him their copy to be reproduced, and select the type whose design they prefer from among those that the machines provide. Any symbol that these do not have the defendant buys from another company called, "Fototype," a competitor of the plaintiff. The copy so prepared the defendant sells to the customer, who reproduces it in any of the ways that the plaintiff's customers reproduce the copy that they make up out of the acetate sheets. The defendant does his business under the name, "Art-Type"; the plaintiff distributes its goods in the east through a subsidiary, "Trans-Art, Inc." The defendant's use of "Art-Type," has resulted in some confusion: that is, two or three times a week he gets a call from prospective customers of the plaintiff, inquiring whether he sells "Artype." To this he always answers that he does not sell that product; and that, if they want to buy it, they should call "Trans-Art." The plaintiff has asked him to discontinue the use of his mark, but he has refused. Upon the trial he stipulated that the trade-mark was "valid and subsisting * * * and in operation." The judge nevertheless declared the trade-mark invalid, because it was descriptive, and denied any relief on the charge of unfair competition for the same reason.

First, as to the claim for relief, based upon the registered trademark. In view of the defendant's stipulation that the mark was valid, he is in no position to insist upon an affirmance of the judgment that it is not, nor do we think that, in analogy with what the Supreme Court has sometimes said in the case of a patent, we are called upon to pass upon the issue on our own initiative. A trade-mark is indeed often spoken of as a monopoly; but in fact it is only

part of the protection of the owner's business from diversion to others by means of deceit. It will be enough if we refuse to enter a judgment based upon the defendant's concession, and reverse the judgment, dismissing the complaint on the first claim without prejudice. This we may do because, as will appear, we hold that the plaintiff is entitled to an injunction on the second claim, determined by the same considerations as would condition any injunction on the first. This disposition of the first claim is, moreover, not a mere matter of form, because the supposed infringement happened in New York, and the law of that state alone is relevant to a decision of the second claim, which is not the case of the first claim, based as it is upon a registered mark.

█ Coming then to the second claim, the question is whether under the law of New York "Artype" is such a mark as will protect the plaintiff from the defendant's use of "Art-Type" as unfair competition. The answer turns upon whether "Artype" is so exclusively "descriptive" of the plaintiff's acetate sheets that it does not indicate the plaintiff as their source. We think that it is not. A good deal could be said for the opposite conclusion, if the 800 letters and symbols on the sheet had been selected with the purpose of pleasing the taste of the buyers, or of those who might read their advertisements. Perhaps the plaintiff may have chosen some of what it put on the sheets because of such an "artistic" appeal, but that cannot apply to the sheets as wholes, for much, if not most, of their contents was compiled for purely utilitarian reasons. Certainly the record does not show that the sheets can properly be described as "art" sheets. In all actions for unfair competition the controlling consideration is whether the second-comer's name, mark or make-up is close enough to the first-comer's to make it likely that those who deal with the first

will understand that the first is the source of goods in fact emanating from the second. Completely "descriptive" marks do not ordinarily indicate the source of the goods, but at times they may come to do so, and when they do, they get that "secondary meaning" which will protect them. Conversely, no care or expense designed to preserve a mark, originally valid, will protect it, if it has in fact come to be only descriptive.[1] On the other hand a mark is not "descriptive," though it contains only descriptive syllables, if, taken as a whole, it does not describe the goods to which it is affixed, though it would be "descriptive," if affixed to other goods. This is altogether aside from any "secondary meaning" that it might acquire.

█ The law of New York has gone to great lengths to protect marks of this last sort. The leading case is Selchow v. Baker, 93 N.Y. 59, in which the plaintiffs called certain puzzles that it sold "Sliced Animals," "Sliced Birds" and "Sliced Objects." The defendant argued that these were words of description, because the games consisted of pictures of some animal, bird, or other object, pasted upon a board, and sawed into a number of irregularly shaped pieces—the puzzle being to fit the pieces together into the original picture. Indeed it was true that, though affixed to such goods, it was somewhat "descriptive"; but the court held that it was not "descriptive" enough; and the opinion closed with the following words at pages 68, 69: "where a manufacturer has invented a new name consisting of a new word, or a word or words in common use, which he has applied for the first time to his own manufacture or to an article manufactured for him, to distinguish it from those manufactured and sold by others, and the name thus adopted is not generic or descriptive of the article, its qualities, ingredients or characteristics, but is arbitrary or fanciful and is not merely to

1. Dupont Cellophane Co. v. Waxed Products Co., 2 Cir., 85 F.2d 75; Dixie Rose Nursery v. Coe, 76 U.S.App.D.C. 371, 131 F.2d 446; Q-Tips v. Johnson & Johnson, 3 Cir., 206 F.2d 144; American Chicle Co. v. Topps Chewing Gum Co., 2 Cir., 208 F.2d 560, 562.

denote grade or quality, he is entitled to be protected in the use of that name, notwithstanding that it has become so generally known that it has been adopted by the public as the ordinary appellation of the article." In Adolph J. Mainzer, Inc., v. Gruberth, 237 App.Div. 89, 260 N.Y.S. 694, 695, affirmed without opinion, 262 N.Y. 484, 188 N.E. 30, the plaintiff made "a product for use by bakers as a covering over fruit tarts", and sold it under the name, "Apricoating." This the defendant imitated by using the term "Apricot Coating" as the name for a similar coating for pies or tarts. The lower court had enjoined the defendant from continuing to use his make-up, which was plainly a plagiarism,—but it had refused to enjoin his use of the name "Apricoating," and the plaintiff appealed from the judgment. The Appellate Division by a divided court reversed it and granted an injunction, because it thought this necessary, 237 App.Div. at page 94, 260 N.Y.S. at page 699, "to prevent further injury, since the continued use by defendant of the words 'Apricot Coating' will destroy or render useless the plaintiff's trade-mark, 'Apricoating' "; and the Court of Appeals affirmed without opinion. Since there was no pretence that the coating itself had anything to do with apricots, and since the mark was applied to the same coating whether it covered one kind of fruit or another, the only possible ground for supporting the term as a mark was that, "descriptive" as it might be if confined to apricot tarts, it was not "descriptive," when applied generally. In Waterman v. Shipman, 130 N.Y. 301, 29 N.E. 111, the word, "Ideal," was protected in obedience to Selchow v. Baker, supra, 93 N.Y. 67, though it might indeed seem to have been no more than an encomium of Waterman pens; and perhaps it cannot stand anyway after Cooke & Cobb v. Miller, 169 N.Y. 475, 62 N.E. 582. On the other hand Keasbey v. Brooklyn Chemical Works, 142 N.Y.

467, 37 N.E. 476, certainly went further than we need go in the case at bar, when it held that "Bromo-Caffeine" was a good mark. The lower courts have applied the same doctrine.[2] For the foregoing reasons we think that the New York courts would protect the mark, "Artype"; regardless of the fact that on this record we could not say that it had ever acquired any "secondary meaning."

It is true that the defendant denies that he has infringed the mark, and it is also true that he adopted his name innocently. Nevertheless, it is an adopted, not a given, name, and it constantly causes confusion; prospective customers of the plaintiff assume that he is connected with the sale of "Artype" sheets, although he has been commendably solicitous to correct their mistake and to direct them to the plaintiff's eastern representative. The situation entitled the plaintiff to some relief when the defendant insisted upon continuing to use the mark after he had learned that it was an infringement. Whether that relief should be so drastic as unconditionally to forbid the defendant to use his adopted name we will not say. As always, a court of equity will shape the remedy so as to do as little injury to the defendant as is necessary in order to insure adequate protection to the plaintiff. These considerations were necessarily irrelevant upon the trial, once the judge decided that the mark was only "descriptive" and should not be protected at all. The record before us is much too meager to allow us to frame a proper judgment; and, besides, in the first instance that is the duty of the district court. The case must go back for a new trial, provided the parties cannot agree upon the proper form of judgment.

Judgment will be reversed upon the claim for infringement of the registered mark and the claim will be dismissed without prejudice, as moot.

2. Smith v. Sixbury, 25 Hun 233; Bailly v. Nashawannuck Mfg. Co., Sup., 10 N.Y.S. 224; Stern v. Barrett Chemical Co., App.T., 29 Misc. 609, 61 N.Y.S. 221.

Judgment will be reversed upon the claim for unfair competition, and the claim will be remanded for further proceedings in accordance with the foregoing opinion.