HUDSON HANDKERCHIEF MFG. CORP., Plaintiff,

v.

HUDSON PULP & PAPER CORP., Defendant.

United States District Court
S. D. New York.
April 27, 1959.

282

David Schwartz, New York City, for plaintiff.

Spille, Curtis, Morris & Safford, New York City, for defendant.

THOMAS F. MURPHY, District Judge.

This action, originally brought in the State Court and removed here because of diverse citizenship, is for an injunction to restrain defendant's alleged unfair competition.

Plaintiff, a New York corporation organized in 1945, is a manufacturer of cloth handkerchiefs and is the nominal successor to two similarly named companies that have been in the same business since 1925. Originally, a New Jersey corporation known as Hudson Handkerchief Co., Inc., secured from the Patent Office in August 1939 a registered trademark. The mark was an elliptical seal with a drawing of a single masted sailing ship and on the top border had the legend, "Half Moon," and below, "The symbol of a fine handkerchief," the latter phrase being disclaimed apart from the mark.

Plaintiff claims the right to the trademark by virtue of what purports to be two duly executed assignments from two defunct corporations, i. e., plaintiff's predecessors, the New Jersey corporation and a New York corporation of the same name, both of which were permitted by plaintiff to lapse for non-payment of taxes in 1946. These assignments are dated March 1957, approximately ten years after the dissolution of the assignor corporations and two years after this action was commenced.

Plaintiff's principal business is the sale of men's cloth handkerchiefs to jobbers and retailers, grossing between $800,-000 and $1 million a year. It also sells gloves, scarves, and belts. Half of its handkerchiefs are sold without label or name of any kind identifying plaintiff as the manufacturer. The other half indicate plaintiff as the source by means of its trademark and others with a small label identical in all respects to the label with plaintiff's trademark but with a different legend, to wit, on the top border "Fine Quality" and below, "Handkerchiefs by Hudson." This mark has never been registered.

With two exceptions its principal advertising has been in trade catalogues plus a listing in the Manhattan Classified Telephone Directory. Its two attempts at national advertising occurred in 1952. In September of that year it had an ad of about 1/24th of a page in Esquire Magazine and in October had a 1/40th of a page ad in Life Magazine. Each ad read: "Fine Handkerchiefs—at Better Stores —Hudson Handkerchief Mfg. Corp."

Defendant has been in business since 1900 and originally made only paper bags and sacks. Between 1940 and 1950 it began also to manufacture and sell a large number of paper products including napkins, towels, facial tissues and, since 1954, paper handkerchiefs. These paper handkerchiefs are packaged in cardboard containers with a transparent cellophane

opening so as to disclose the color of the paper. Since 1954 it has sold these paper handkerchiefs in groceries and in supermarkets in the household paper products sections where no cloth handkerchiefs are sold. The box container has prominently displayed on five sides the name "Hudson Hankies." Defendant spends large sums of money each year in national advertising—$1 million per year since 1953; between $1½ and $2 million in 1958, and its present budget is $2½ million. It markets all its products under the name "Hudson." Its sales of "Hudson Hankies" are currently at the rate of 6,000 to 8,000 cases per month, each case containing 72 boxes.

Plaintiff's only witness, its president, testified that some time in 1954 he learned of the fact that defendant was advertising its "Hudson Hankies" on radio and television. It was his testimony also, which was not corroborated and which we do not accept, that he received some telephone calls from people thinking that it was his company that was doing the advertising for "Hudson Hankies." This witness further testified that he received two orders from F. W. Woolworth & Company for merchandise manufactured by defendant. An examination of the exhibits, however, discloses that these orders were actually addressed to defendant, and intended for defendant, and somehow or other were received by plaintiff and, incidentally, were not for handkerchiefs, cloth or paper. The only other exhibit relating to confusion was an order from F. W. Woolworth & Company for cloth handkerchiefs, addressed to plaintiff and intended for plaintiff but inadvertently sent to defendant and forwarded by defendant to plaintiff.

Plaintiff's president also testified that in 1950 he thought of packaging a paper handkerchief and went so far as to contact a number of paper houses, and in 1957 went to Japan for a variety of reasons, including the possibility of purchasing paper. It was obvious that he did very little about this thought, assuming that he seriously considered going into that business. He exhibited a complete ignorance of the quality and style of paper that could be marketed, plus a complete unfamiliarity with its cost.

Although the complaint alleges infringement of the trademark and unfair competition with what it describes as its trade name, to wit, "Hudson Handkerchiefs," plaintiff's brief after trial states its claim as follows:

"At the outset let it be stated that the plaintiff has never sought and does not now seek to have the defendant enjoined from using the word 'Hudson' as such as a part of its corporate title. Nor has the plaintiff any dispute with the defendant's general operations insofar as it relates to the many products displayed in Court and manufactured and sold by the defendant.

"Plaintiff merely seeks to have the defendant restrained from using the word 'Hankies' which is concededly a contraction of the longer word 'Handkerchief' in combination with the word 'Hudson.' Plaintiff's position is simply that in the present circumstances the defendant's use of the words 'Hudson Hankies' does not give the plaintiff the protection to which it is entitled and constitutes 'unfair competition' according to recognized and well-established principles of equity."

Quite obviously there is no claim for infringement of trademark, nor could there be, even assuming that the mark belongs to plaintiff by virtue of the assignments from the defunct corporations —in fact plaintiff does not claim such infringement. As we understand the restatement of plaintiff's claim it would appear that it feels it has a trade name, to wit, "Hudson Handkerchiefs," and that defendant by the use of the words "Hudson Hankies" unfairly competes with it.

We are not satisfied that plaintiff has in fact the trade name "Hudson Handkerchiefs." The only proof offered (the two minute ads in Life and Esquire in

1952, and the trade circulars) is significantly without the phrase "Hudson Handkerchiefs." The ads and the trade circulars prominently use plaintiff's corporate title "Hudson Handkerchief Mfg. Corp." plus the trademark "Half Moon," and are primarily concerned with advertising cloth handkerchiefs of good quality manufactured by plaintiff that can be found in better shops. However, assuming that plaintiff has a trade name and has developed sufficient good will and reputation in it by long use, the question remains whether any tort has been committed by defendant, i. e., has defendant unfairly competed with plaintiff?

■■ At the outset it must be stated that there was no evidence whatsoever of any palming-off, nor was there any proof that plaintiff ever received any letters which indicated a confusion between its product and that of defendant's. The only proof offered was by plaintiff's president who testified that he received some telephone calls at the beginning of defendant's advertising program. As we said before, we disbelieve this testimony and have discounted it. The only other proof was the exhibits from Woolworth's which at best show that some clerk in Woolworth's misdirected a correctly addressed order and moreover, those addressed to defendant were not for handkerchiefs. But the test is not whether there was in fact confusion but whether there is ground to believe that there is a substantial likelihood for confusion. We realize, too, that there can be unfair competition even though the businesses involved are not directly competitive, but in such situations there has to be an intention to trade on the other's reputation and good will, or where that necessarily will be the result. The evidence showed that the two businesses are not competitive. Plaintiff's product is not sold in groceries and in supermarkets and when sold to jobbers and wholesalers is sold half the time without distinguishing mark or label. Defendant's product is sold almost exclusively in groceries and supermarkets and is then displayed in the household paper products section where no cloth handkerchiefs of any kind are sold.

■ Calling defendant's product "Hankies" is probably a Madison Avenue idea. Women (and men for that matter) ever since the advent of facial tissues have used such facial tissues to blow or wipe their noses. This use led defendant and other manufacturers to the idea of packaging tissues in smaller boxes and in handkerchief size in order to capture part of the cleansing tissue market or create a new one. The whole trend of blowing noses into disposable tissues instead of into linen or cotton handkerchiefs has a relation to the cost of laundry but the tissue, whether facial or "Hankie," is still not what Webster calls a handkerchief. A handkerchief, by definition, is still a piece of cloth.

Plaintiff, virtually unknown on a national basis and known only to its retail customers as a manufacturer of cheap cloth handkerchiefs, principally for men, has not lost a customer because of defendant's "Hudson Hankies." The public, the jobbers or the supermarket owners who buy defendant's product never heard of the plaintiff and could not possibly even suspect that the paper tissues called "Hudson Hankies" emanated from plaintiff. We suspect that if plaintiff is losing business it is because more people are using tissues and less handkerchiefs, but so is the milliner selling less hats because women are either not wearing hats or are wearing scarves. This is not unfair competition. The cycle is changing and plaintiff is standing still.

Applying Judge Hand's test of unfair competition as stated in Artype, Inc. v. Zappulla, 2 Cir., 228 F.2d 695, 697, the second comer's name, mark or make-up, to wit, "Hudson Hankies," we find, could not possibly make it likely that plaintiff's customers, jobbers, 5 & 10¢ stores and retail stores would understand that plaintiff is the manufacturer of paper handkerchiefs sold almost exclusively in groceries and supermarkets. There is no confusion, actual or likely; there is no tarnishment of plaintiff's product and

no likelihood of expansion by plaintiff into the paper handkerchief field in the foreseeable future.

Accordingly, the complaint is dismissed and defendant is entitled to judgment.

This memorandum is filed in lieu of findings of fact and conclusions of law.